```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
JOSEPH SHANNON,                          :    05 CIV. 3604 (DLC)
                Plaintiff,               :
                                         :    OPINION & ORDER
        -v-                              :
                                         :
JIM NICHOLSON, Secretary of Department   :
of Veterans Affairs,                     :
                                         :
                Defendant.               :
                                         :
-----------------------------------------X
```

Appearances:

For Plaintiff:
Andrew A. Rowe
25 Washington Street, Suite 303
Brooklyn, NY 11201

For Defendant:
Pierre G. Armand
Assistant United States Attorney
United States Attorney's Office for the
Southern District of New York
86 Chambers Street
New York, NY 10007

DENISE COTE, District Judge:

Plaintiff Joseph Shannon brings this action alleging that his discharge from employment at the Bronx VA Medical Center (the "Bronx VA") was motivated by discrimination on the basis of his race or color. Defendant moves for summary judgment, arguing that Shannon has failed to make a prima facie case of discrimination and that there was a legitimate, non-discriminatory reason for his discharge. Defendant's motion is granted.

Background

The following facts are based on the uncontroverted evidence, as summarized in the defendant's statement of facts submitted pursuant to Local Civil Rule 56.1. Because Shannon has not submitted any response as required by the rule, all of the facts set forth in defendant's statement that are supported by admissible evidence are deemed admitted. See Local Civil Rile 56.1; see also Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003). Indeed, Shannon has submitted no affidavit or other admissible evidence that would support a genuine dispute with defendant's proffered facts.

From November 4, 2002 to July 17, 2003, Shannon worked as a probationary police officer for the United States Department of Veteran Affairs (the "VA") at the Bronx VA. He was interviewed by Chief of Police Albert Aviles, who recommended that he be hired. All probationary VA police officers must successfully complete a mandatory Basic Police Officer Training Course (the "Course") as a condition of their continued employment. The Course is administered at the VA Law Enforcement Training Center in Little Rock, Arkansas (the "LETC").

Before the Course begins, though, students take a pre-training course offered at their station of origin. Completion of the pre-training is mandatory and students must certify that they have completed all pre-training before reporting to the LETC. The Course begins with an entry exam which tests students' knowledge of the material covered in the pre-training. Students

2

must maintain an average of 75 or higher to remain in the Course; those with a cumulative average of less than 75 after the first two weeks are dismissed. Students must also pass the final exam with a score of at least 75 percent. The Course includes physical fitness and side-handle baton (also known as "PR-24") training, as well as classroom instruction. The PR-24 training includes a written exam, also requiring a score of at least 75 percent, and a physical proficiency exam requiring a score of 95 percent.

All probationary officers must successfully complete all portions of the Course in order to have law enforcement and arrest authority. Before October 1, 2002, the VA allowed students who passed academically but failed the physical fitness or PR-24 portions of the Course to retake those portions at their stations of origin. A new policy, effective October 1, 2002, requires students to pass all portions of the Course at the LETC.[1]

The VA may terminate the probationary employment of any officer who fails the Course. When this happens to a Bronx VA officer, Chief Aviles may submit a recommendation to the Bronx VA Human Resources Department ("HR") that the employment of the probationary officer be terminated. An HR specialist initiates

---

[1] The LETC PR-24 training manual states that officers who fail PR-24 "will be re-trained and re-tested." According to Christopher Price, Deputy Director of the LETC, the training manual was last updated in 2000 and does not reflect current VA policy. Since the policy change, the LETC has dismissed all students who have failed to pass all portions of the Course.

3

the termination process after verifying that termination is appropriate and consistent with applicable regulations. A termination letter sent from a Human Resources Officer officially discharges the officer from the VA.

In exceptional circumstances, Aviles may decline to recommend termination and instead recommend that the officer be permitted to retake the Course. Both decisions, to discharge a probationary employee, and to permit re-enrollment in the Course, are made by the VA station of origin, not the LETC.

Shannon attended the Course in May and June 2003. He failed the entry exam, passed the first and second week tests, and failed the third. After three weeks in the Course, Shannon had a borderline passing average of 75 percent. He scored a 93 on the physical exam in PR-24 training, two points shy of the passing score. He was dismissed from the Course on June 18, 2003, and did not complete the remaining academic portion.

As is his practice when a Bronx VA officer fails the Course, Aviles spoke with the Deputy Director of the LETC, Christopher Price, about Shannon's performance. Price told Aviles that Shannon's performance at LETC had been mediocre, and that he doubted that Shannon would be able to pass the Course if given a second opportunity. At no point during the Course or immediately afterward did Aviles become aware of any exceptional circumstances that might have explained his poor performance.

Aviles recommended to HR that Shannon's employment at the Bronx VA be terminated. HR Specialist Gerda Lloyd reviewed the

recommendation and agreed that termination was appropriate. Shannon was informed by a letter dated July 1, 2003 that his discharge would be effective July 17.

Two other students from the Bronx VA were given opportunities to retake portions of the Course.[2] One was Reynaldo Mendez. Mendez, an Hispanic male, attended the Course at the LETC in April and May 2002. He passed academically but failed the PR-24 test. Aviles recommended that Mendez's employment be terminated following his return to the Bronx VA, but this recommendation was overruled as inconsistent with VA policy at the time, which allowed students a second opportunity to retake the non-academic portions of the Course at their home stations.[3] Mendez retook the PR-24 exam and passed.

Another student was given a second opportunity to retake the

---

[2] Shannon's complaint references a third student, Gerald Lavigne, who attended the Course at the LETC at the same time as Shannon. Although Lavigne was also dismissed for failing PR-24, Shannon alleges in his complaint that Lavigne would be given a second opportunity to retake the exam. Shannon appears to have abandoned his comparison to Lavigne, as there is no mention of him in Shannon's papers opposing the motion. Even if Shannon had not done so, however, the comparison is unavailing. Decisions to allow an officer to retake the Course are made by the officer's station of origin, which for Lavigne was Manchester, New Hampshire. Because Aviles had no input in any decisions regarding Lavigne's employment, any comparison between Shannon and Lavigne is not probative of whether Shannon was the victim of race-based discrimination. See Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997) (holding that employees with different supervisors were not similarly situated for purposes of disparate treatment claim).

[3] Shannon takes issue in his opposition brief with defendant's statement that this fact is undisputed. Shannon states that he "does not concede this whatsoever," but has offered no evidence to contradict it.

5

academic portion of the Course. Leslie Torres, an Hispanic female, attended the Course in August 2003. She had an average of 81 going into the final exam, but failed the final exam by two points. Prior to taking the exam, Torres learned that her father had suffered a stroke. When Aviles and Price spoke later, Price informed the Chief that Torres was a very good student; that she had no difficulties learning the material; that she worked diligently and attended study groups and after-hours training; and that she had an overall passing score but had failed the final exam by two points after learning of her father's condition. Aviles believed that Torres presented an exceptional case and deserved a second opportunity to attend the Course. Torres re-enrolled in the Course in February 2004 but withdrew after the second week to attend to her father, whose health had deteriorated further. In light of her strong performance at the time of withdrawal (she had a 90 percent average) and the circumstances of her father's illness, Torres was permitted to enroll for a third time in the Course in September 2004. She passed with an 85 percent average.

## Discussion

Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 465 (2d Cir. 2000). The same standard is applied in employment discrimination cases as in all others. Id. (citing

6

Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133 (2000)). Thus, even though the evidence must be viewed in the light most favorable to the non-moving party, with all reasonable inferences drawn in its favor, "the test for summary judgment" even in discrimination cases "is whether the evidence can reasonable support a verdict in the plaintiff's favor." James v. N.Y. Racing Ass'n, 233 F.3d 149, 157 (2d Cir. 2000); see also Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 102 (2d Cir. 2001) ("A court is to examine the entire record to determine whether the plaintiff could satisfy his ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." (citation omitted)).

Shannon's claims of discrimination on the bases of race are analyzed under the burden-shifting framework first established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The initial burden falls onto the plaintiff to establish a prima facie case of discrimination. Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 142 (2000). If the plaintiff succeeds, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. The defendant's burden is one of production, not persuasion. Id. If the employer meets its burden, "the McDonnell Douglas presumptions disappear from the case," James, 233 F.3d at 156, and "the trier of fact proceeds to decide the ultimate question: whether plaintiff has proven that the defendant intentionally discriminated against him because of his

race." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993).

To establish a prima facie case of discriminatory discharge, a plaintiff must establish that he (1) is a member of a protected class; (2) was qualified for the position; (3) was discharged; and (4) that his discharge occurred under circumstances giving rise to an inference of discrimination on the basis of membership in the protected class. Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87, 91 (2d Cir. 2001). The burden of establishing a prima facie case to support a claim of employment discrimination is minimal. McGuiness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001). The parties do not dispute that Shannon is a member of a protected class with respect to his race discrimination claim, nor that he was discharged. There is significant dispute, however, regarding the second and fourth elements of his prima facie case.

To satisfy the qualification prong of a prima facie case, a plaintiff "must show only that he possesses the basic skills necessary for performance of the job." Slattery, 248 F.3d at 92 (citation omitted). The Second Circuit has warned that district courts are not to interpret this prong in such a way "as to shift onto the plaintiff an obligation to anticipate and disprove, in his prima facie case, the employer's proffer of a legitimate, non-discriminatory basis for its decision." Id. Consequently, "the qualification necessary to shift the burden to defendant . . . is minimal." Id.

Although the plaintiff's burden is minimal, his qualifications must still be assessed by reference to "the criteria <u>the employer</u> has specified for the position." <u>Thornley v. Penton Publ'g</u>, 104 F.3d 26, 29 (2d Cir. 1997) (emphasis added). Shannon argues that was qualified by virtue of his experience as a former New York City corrections officer and that he had "no problem at all in the day-to-day functions at the Bronx facility." Yet he also admits that he did have a problem passing the PR-24 exam and that he had no experience working with this instrument.[4]

Shannon's admitted failure of the test required for all new hires to proceed beyond probationary status is itself evidence that he did not possess the basic skills necessary for the performance of his job.[5] His suggestion that successful

---

[4] Shannon suggests in his brief, without any evidentiary support, that his failure was due in part to the lack of proper training he received at the VA. The only evidence regarding the amount of training he received demonstrates to the contrary. Shannon certified to the VA in his Initial Entry Training Certification that he had received all 80 hours of pre-training, and he specifically initialed to indicate completion of 12 hours of PR-24 training.

[5] It is true that "where discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw." <u>Slattery</u>, 248 F.3d at 92. But this does not mean that nothing beyond the fact of hiring need be shown; otherwise, this requirement would be completely superfluous in all discharge cases. In any event, an inference of minimal qualification is less readily available in cases such as this where the employee is hired on a probationary basis. As civil service regulations reflect, the very purpose of a probationary period is "to determine the fitness of the employee" and allow him to "demonstrate fully his qualifications for continued employment." 5 C.F.R. § 315.803. The Second Circuit similarly recognizes that while the showing required to make a <u>prima facie</u> case should be minimal, an employee who fails

completion of PR-24 is not a qualification for this position is contradicted by all of the relevant evidence. Deputy Director Price and Chief Aviles both stated that VA policy, effective at the time Shannon enrolled in the Course, required students to complete all portions of the Course at the LETC, and to be dismissed if they failed to do so. Their affidavits establish that successful completion of the PR-24 at the LETC was among the VA's "honestly-held expectations" for qualified probationary officers. Thornley, 104 F.3d at 30.[6] In light of his failure to prove his qualification, Shannon cannot carry his burden with respect to the second element of his prima facie case.

With respect to the fourth element of the prima facie case, a plaintiff may carry his burden "by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000). In order to raise an inference of discrimination, the plaintiff must be "similarly situated in all material respects" to the individuals with whom he seeks to compare himself. Shumway v. United Parcel Serv., 118 F.3d 60, 64

---

to prove his qualifications during a probationary period may not be able to carry this burden. See Gregory v. Daly, 243 F.3d 687, 697 n.7 (2d Cir. 2001) (citing with approval McLee v. Chrysler, 109 F.3d 130, 135 (2d Cir. 1997)).

[6] Shannon's attempt in his motion papers to question the authenticity of the document announcing the policy change is unavailing. Price and Aviles both provided sworn statements that this is VA policy and there is no admissible evidence to the contrary.

(2d Cir. 1997) (affirming finding that plaintiff failed to present prima facie evidence of discrimination). "A plaintiff is not obligated to show disparate treatment of an <u>identically</u> situated employee" when presenting prima facie evidence of discrimination, but the object of comparison "must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." McGuiness, 263 F.3d at 54. A plaintiff meets this standard by demonstrating that the employees to whom he compares himself "were subject to the same workplace standards" as the plaintiff and had engaged in conduct of "comparable seriousness." Graham, 230 F.3d at 40.

Shannon supports his claim of disparate treatment by pointing to Mendez and Torres, both of whom were permitted to retake segments of the Course after failing them. Mendez enrolled in the Course at a time when VA policy explicitly allowed students to retake PR-24 at their stations of origin if they failed it at the LETC. Because this policy had been modified by the time Shannon enrolled in the Course, the two were plainly not subject to the same workplace standard and therefore are not similarly situated for the purposes of a disparate treatment claim.

Torres, on the other hand, was subject to the same workplace standard. Whether she and Shannon were similarly situated thus depends on the comparability of their conduct. "The determination that two acts are of comparable seriousness

requires -- in addition to an examination of the acts -- an examination of the context and surrounding circumstances in which those acts are evaluated." Graham, 230 F.3d at 40. While Torres and Shannon did both fail to complete the Course successfully, they in fact failed in quite different ways. Shannon failed two of the three tests he took, had a borderline passing average, and failed the PR-24 requirement before he was able to move on to the final examination. Torres, in contrast, passed every exam except for the last, and finished the Course with an overall passing average. Furthermore, the circumstances surrounding the two failures are markedly different. Torres had been informed before taking her final exam that her father, already in poor health, had suffered a stroke. Shannon had not introduced evidence of any similar emergency that might have distracted his attention from his studies. Given these significant differences in the experiences of Torres and Shannon at the LETC, it cannot be said that there is "a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases" such that the two could be considered similarly situated in all material respects. Id. at 40. O'Neal has therefore failed to carry his burden with respect to the fourth element of his prima facie case as well.

Even assuming arguendo that he had made out a prima facie case of discrimination, though, the VA has met its burden of production of evidence that Shannon was fired for a legitimate, non-discriminatory reason. Aviles and HR Specialist Gerda Lloyd

both submitted affidavits stating that Shannon was terminated solely because of his poor performance at the LETC.  Having met its burden, the VA is entitled to judgment as a matter of law unless Shannon offers sufficient admissible evidence that would enable a reasonable factfinder to conclude that the VA's proffered justification is pretextual and that the true reason for his discharge is discrimination.  See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507 (1993).  ("It is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.").

Shannon has failed to raise a genuine issue of fact as to whether the VA intentionally discriminated against him on the basis of his race.  As discussed in the context of his prima facie case, Shannon has not demonstrated that he was qualified for continued employment at the Bronx VA, and he has not shown that his discharge occurred under circumstances giving rise to an inference of discrimination.  His unsupported allegations that Aviles has discharged only black officers, while two Hispanic officers have been permitted to re-enroll in training are simply not probative of whether he himself was the victim of discrimination, particularly in light of uncontroverted evidence that he did not meet his employer's pre-existing qualifications for employment and that he was not similarly situated to those to whom he compares himself.  See Byrnie, 243 F.3d at 101 ("[A] non-moving party may not rely on conclusory allegations or unsubstantiated speculation." (citation omitted)).

Furthermore, Shannon makes his claim under circumstances that "strongly suggest that invidious discrimination was unlikely." Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997). Aviles interviewed Shannon, recommended that he be hired, and then recommended that he be terminated only eight months later. The Second Circuit considers such circumstances "highly relevant." Schnabel v. Abramson, 232 F.3d 83, 91 (2d Cir. 2000). For "when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire. This is especially so when the firing has occurred only a short time after the hiring." Grady, 130 F.3d at 560. Shannon has not submitted any evidence, or given reason to believe that any exists, that would enable a reasonable factfinder to conclude that the same actor who hired him was suddenly motivated by racial animus to let him go.

He argues that there is circumstantial evidence of discrimination to be found in the VA's participation in a "Hispanic Employment Initiative." To support this argument, he refers to a printout of an Office of Personnel Management website to which the VA website provides a link. Even if this printout were admissible, it is does not raise a reasonable inference of discrimination. There is no evidence that the VA participates in this program (or any equivalent program), and indeed the printout shows that the VA website explicitly disclaims any endorsement of its linked sites.

## Conclusion

Shannon has not demonstrated his qualifications for employment beyond the probationary period, or that his discharge occurred under circumstances that would support a reasonable inference of discrimination based on his membership in a protected class. For these reasons, he has failed to establish a <u>prima facie</u> case of discrimination, and the VA is entitled to judgment as a matter of law. Moreover, even if Shannon had succeeded in carrying this minimal burden, the VA's proffered nondiscriminatory reason for Shannon's discharge "is dispositive and forecloses any issue of material fact." <u>Back v. Hastings On Hudson Union Free School Dist.</u>, 365 F.3d 107, 124 (2d Cir. 2004) (citation omitted). The VA's motion for summary judgment is granted; the Clerk of Court shall close the case.

SO ORDERED:

Dated:     New York, New York
            March 31, 2006

                                              DENISE COTE
                                  United States District Judge